to the companion case, I guess we'll call it. It's not quite a companion case, but the same defendant, the underlying charges. So Mr. Bacharach, you've reserved another three minutes for rebuttal. So that's fine, you may proceed. You might want to pull those mics closer to you, Mr. Bacharach. These high ceilings like to swallow up sound. Okay. Thank you. With respect to the material support case for Mr. Saleh, this is obviously not a sentencing case. That's not an issue at all. For here, it is merely a question of whether or not his plea was knowingly and voluntarily entered into. And specifically the question is whether or not the nature of the plea, as opposed to whether or not there were sufficient factual basis to accept the plea. I guess the first issue is really what's the standard of review that we're applying. Is it plain error or harmless error or what? So that really turns on whether or not your client actually asserted a Rule 11 violation below. You're asking us to take, I think, a pretty broad reading of his doing. But it seems that he's primarily just voicing frustration with his own attorneys. I am asking you to take a, well, I think he's doing more than simply expressing frustration with his attorneys. If that was the case, well, he doesn't say I didn't understand what I was doing. Well, well, first of all, just to finish my sentence, Your Honor, if I may, I apologize. If he was only taking out his frustration on his attorneys, the only request he would have been making would be to fire his attorneys and for new counts. He wouldn't have been asking to take his plea back as well. So he's asking for two things there. And the reason why he's asking for is because he says the exact words were, I feel my attorneys did not properly inform me of my case. Now, yes, you can view that as, in a narrow construction of that, would be he didn't understand his discovery properly. A broad construction of that is that he didn't understand the law when applied to the facts, which is another way of saying the nature of the offense. And this circuit's precedent is you take the broad view, that they have to be liberally construed to raise the arguments the strongest that they suggest. That's McLeod v. Jewish Guild for the Blind, which is 864 F3rd 154. It's a Second Circuit case from 2017. Let me ask you a question. And Berlin v. U.S. as well. Assuming we agree with you on that, let me just ask you about the merits. I think, and you can correct me if I'm wrong, I think we've said over and over again the government cited the cases, Glenn, Mayer, Lloyd, that one of the ways a judge can satisfy advising a defendant of the nature of the charges that is sufficient for Rule 11 purposes is to read the indictment, because the indictment contains the elements of the charge, and that's essentially what you're required to do. And I think it's clear that the district judge here read verbatim the language in the indictment. So why wouldn't that be completely consistent with our precedent? Well, your precedent, Your Honor, I apologize, I didn't write that. The Mayer case, no, the Mayer case, no, the Mayer case. In the Mayer case, we said one of the ways we could do is, or, the court may provide the information by reading the indictment to the defendant, where the pertinent count spells out the elements of the offense. So the Mayer case I'm familiar with, what I was actually looking for was United States v. Saft, which is where the court found that reading the indictment may be sufficient depending upon the circumstances. And that's the point. Yes, first of all. That language is in Mayer as well, but what is your basis for saying that the circumstances would suggest that reading the indictment wasn't sufficient here? Here, when he's then asked to explain in his own words the conduct that he did, it's not clear, he's not able to do so in a manner that's sufficient to satisfy either the government or the court. I know, but then the court followed up, and we can also consider the circumstances of what he was told during the back and forth of his allocution. The court said, did you send $500 to an individual overseas knowing that that person wanted to join ISIS? Yes. So when the court asks him that, and he responds yes, certainly he doesn't understand that the person wanted to join, you couldn't possibly state it better in a sentence and cover all of the elements than that. Well, Your Honor, and that's just it. That's the crime, right? He's, at the end of the plea hearing, when the defendant is unable to explain in his own words what he did, to be able to articulate his understanding of what he did, the judge then reads the elements and makes sure, yes, yes, yes, leading question. I'm not suggesting that the judge didn't read the elements of the crime. The judge took those elements and boiled it down to the facts that pertain to him and told him, this is, you know, did you do this? This is the crime. He said yes. No, he doesn't say this is the crime. What he says, Your Honor, is did you do this? Yes. Did you do this? Yes. Did you do this? Yes. So what he's doing is he's confirming with the defendant that he has, in fact, committed the acts necessary to commit the crime. Whether or not he commit the crime and he understands that he commit those acts is not the same thing as necessarily understanding why those acts are necessary. If the defendant had said, I sent $500 to an individual receipt knowing that that person wanted to join ISIS, you would say that would have been fine. So if it's flipped around, the judge would say, what's the difference? What's the difference whether it came out of his mouth and understanding the charges? The difference in determining whether or not a defendant is understanding the charges is whether or not the defendant is able to articulate it for himself. Let me give an example, Your Honor. We've never imposed the standard that the defendant has to do that, have we? In the conspiracy context, you have. I don't have... Well, conspiracy is another matter because conspiracy is a slippery thing and an individual act, not, you know, just getting the conspiracy underway makes you a member of it. So we've been a little bit more cautious in conspiracy. Don't try to morph conspiracy over onto this. This is a little bit different, isn't it? Well, it's a different type of offense, absolutely, Your Honor. But the point is that conspiracy, when you're asking the defendant, do you understand what a conspiracy is? The reason why the courts require that is because it's complicated. And they want to make sure it can be understood. It sounds like you're asking us to announce a rule that says district courts can't ask leading questions during a plea colloquy. No. There's no authority for that. There's a difference between the requirement to ensure that the factual elements are satisfied under Rule 11B3 versus the separate requirement to understand that the defendant himself understands the nature of the offense. It would be no longer sufficient for a judge to go through the elements of the crime. If you don't say to the defendant, you have to go through all the elements of the crime. Now tell me, I just told you the elements of the crime. Now tell me what you think the crime is. That seems to be what you're suggesting, that the defendant has to articulate his understanding of the crime, which would be unheard of. I don't think it would be unheard of, Your Honor. It's playing face of the rule to understand the nature of each charge. And generally what happens in every other- And we say that is satisfied when you tell the defendant the elements, that you don't have to ask them to tell the elements back to you. We've asked you to tell us what you did. The purpose of that is to make sure they committed the crime. It's a factual basis for the crime. It's not to explore further his understanding of the crime. Well then, at what point in the- if that's not to explore his understanding of the crime, at what point in the allocution is a defendant- In the beginning, when you say, here's what you're charged with, and often the judge says, and here are the elements. Correct. Sometimes they have the prosecutors describe the elements, which is not preferable, but- I agree with you, Your Honor, in the beginning. And that's what normally happens. In the beginning, the judge will explain the elements, or in many cases, either the elements or they'll turn to the prosecution and say, tell us what you would have proven at trial which would have satisfied the elements. And all of that is done- That's a different inquiry under Rule 11. Let's stay focused on what your argument is. Your argument is that there was not a sufficient Rule 11 colloquy to show that he understood what the offense was, what the elements were. Right? What the law was in relation to the facts, yes. So what I mean by that, because that's the language of many of the cases, Your Honor. And what I mean by that is, I'm not saying there wasn't sufficient for him to acknowledge what he did. I'm saying it was insufficient to establish that he understood it was unlawful to do so. But ordinarily, a judge will say, these are the elements, 1, 2, 3, 4. That didn't happen here. No. But alternatively, we have said a judge can read the indictment, and that's usually going to be enough. And we've left some wiggle room where they're really complicated charges, perhaps, or the language of the indictment, language of the statute is not that clear. But what is the basis for saying this is that case? Well, as we discussed in the last argument, Your Honor, his mental health issues is the argument why, would be the argument why this is a case where the judge needed to take special extra care. As Your Honor said, usually you have either the indictments read at the beginning, before he pleads, or either the judge states the elements, or the government is asked to state the elements. And all that happens before he's then asked to take, you know, how do you plea and describe what you did. So it's set up so that the explanations are done before he then pleads guilty and explains what he did. At the arraignment, Ms. Kelman said, I've read the indictment out loud to him. I don't understand the exact words. He understands the nature of the charge. So we know that when Judge Kuntz read the indictment to him, that wasn't the first time. At his arraignment, long before his plea, the same exact thing had been done. We can consider that. Well, I'd have to find the case in my brief, but I know I that attorney explaining the charges to the, the nature of the charges, the defendant is not sufficient. It has to be, it has to come from the court. Oh, so no. That wouldn't be, and also, again, it does come down to, I'm sorry, I've seen it way over time, but it does come down to his mental health. That is really what makes this case unique, and why extra care was necessary. And I guess I can save this to the reply, but just to say, if you look at the way that plea hearing began, you can tell from the very beginning that there were, that the mental health issues were screaming out. The defendant was unwilling at the beginning to swear under oath, and what you don't see is that he's not simply saying, I won't swear. He's screaming, I won't swear. And finally, he, so the judge pivots and very gracefully pivots to saying, well, will you affirm? And he, and he's willing to affirm. And then the clerk says, will you swear? And he goes, I won't swear. And the judge goes, no, no, will you affirm? And then when he says, you affirm, he will. But that's not necessarily a mental health issue. A lot of people don't want to swear for a variety of reasons. But anyway. But they don't have to. They don't have to. They don't have to say that. You're going to get another three minutes. Yeah. I was just going to say, they don't have to scream at you. OK. Let's go on to Reddy. I'm pronouncing that correct, right? Yes, Your Honor. Thank you. May it please the court. My name is Saritha Kamadi Reddy. I represented the government in the district court. Let me start at the outset with this notion of mental health issues. First of all, it's very important to note that at various times over the course of the district court litigation in this case, various counsel have raised the prospect of mental health issues. However, they never actually made a motion that the defendant was not competent. They never litigated that he had some sort of insanity defense or even a diminished mental capacity as a defense to the charges or as a reason not to plea. In fact, the plea record is very clear. Counsel states that the defendant is prepared to plead guilty, and he has no reason to believe that otherwise. With respect to this notion of swearing versus affirming, this plea proceeding lasted for approximately an hour and a half. At the very beginning, there was an extensive discussion and pause in the proceedings so that counsel could speak to the client about swearing versus affirming. And as Your Honor suggested, that's not explained by mental health issues. It's explained by the defendant's ideology. From the outset, his belief was that the U.S. justice system was not a legitimate system. He did not want to participate or acknowledge its legitimacy. And as such, he did not want to swear. He wanted to affirm in order to proceed with the proceeding. That's part of his world view as an ISIS follower. It's not evidence of a mental health issue. With respect to whether the defendant understood the charges against him, the court is entitled to take into account the entire record. And as we set forth in our brief extensively, there were three separate arraignments where the defendant was advised by a judge of the nature of the charges. In each of those arraignments, defense counsel also stated that she read the charge or the indictment, either the complaint or the indictment in full. But not the elements, right? There's nothing, I don't think, anything in the record where anybody said to him these are the elements the way one would normally expect would take place at a guilty plea. At a guilty plea. Right. At the guilty plea. So is there anything in the record to show that somebody said these are the four elements that need to be met? One, two, three, four. There's nothing like that, right? Not in the list form, Your Honor. That's really what we would prefer, wouldn't you say? I understand that, Your Honor. I think that the Rule 11 requires that the district court determine that the defendant understands the charges. That can be done in a variety of ways. There's not a magic words kind of requirement. And the fact that the district court here read the charge, the charge contains all the elements. And, in fact, the defendant himself has demonstrated that he understands the nature of the charges in his own letter because he talks about how the charges are of attempted aiding and abetting. And so I think with this record as a whole, we see that the defendant talks about his conduct even in his allocution. He states that the basis for count two, he states that he sent money to an individual in order to help them join ISIS. So those are his words demonstrating his understanding of what it is that he did that was criminal. His initial allocution satisfied the basis for count two, explaining not just the conduct but why that was a criminal act. And the follow-up questions set out the basis for count three because count three had to do with his own attempts to travel. So I think in the record as a whole, given that the indictment is read, the plea agreement that lays out the charges is read verbatim, those various charging documents were read to him previously, and the defendant's own post-plea statement of what the charges are against him is an ample basis for the district court to conclude that the defendant understood the charges against him and for this court to affirm. I guess I'd ask you just to respond quickly to Mr. Bachrach about the standard. So with respect to his letter, it doesn't expressly say that he doesn't understand or didn't understand what the charges were or the nature of the offense. He's saying we should be taking the broadest possible view. So does the letter support a broader view than what you indicated in your brief? Your Honor, this court has instructed litigants and courts to construe pro se filings liberally, but in this case, the defendant actually specifies what his complaint is. He says he was not properly informed of his case, but he specifies what aspects of the case, discovery and motions. And in light of that specificity, there's no need, I think, to go beyond that. Furthermore, again, he states what his charges are. So maybe in the absence of that, one might construe it liberally, but he actually describes his own charges in this document, and so there's no basis to say that he is, in here, asserting that he did not understand the nature of his charges, and that is a basis for withdrawing his plea. Unless the court has any other questions, we'll rest on our brief. Thank you. All right. Thank you very much. Mr. Bachrach, back to you. You're going to get a lot of exercise. It's been years, Your Honor. I haven't seen you in so long. Two points. First, with respect to the question of competence, the fact that the counsel never raised competence at any point, there is a difference between competence to stand trial or competence to plead versus mitigation. In the capital context, this isn't capital, but in the capital context, there's even a statute for it, 18 U.S.C. 3592A3, if I'm remembering correctly, which specifically explains, in the capital context, a jury is allowed to recognize that specifically mitigation for a reason not to impose a death penalty can be a mental health issue that's something less than competence. So just as a jury can consider that as a reason not to impose death, so too can a court and can counsel argue that mental health issues are a basis for mitigation at sentencing, even if we haven't raised it previously as a basis to whether or not you can plead. Right, but we're talking about mitigation and sentencing now. I think what your argument is that we should consider information that was developed in connection with sentencing and before the court then as a basis to assess whether or not he understood what was taking place at his guilty plea, right? Yes. Now, Your Honor, with respect to the letter, now I think the government made a great point. They said in the letter he talks about the nature of the offense, essentially that what his offense was was to aid and abet an FTO. But the thing is, the letter is written two years later. So if we're liberally construing the letter, what you have here is a letter where a defendant, after two years has been thinking about it, finally realizes what he did wrong, finally realizes that his counsel did not properly inform him of his case, and he goes, wait a second, they charged me with aiding and abetting a foreign terrorist organization, that's what I pled guilty to? I didn't understand that's what I'm pleading guilty to. I want my plea back. And that's what he's asking for when you're liberally construing the letter. He doesn't say I was out of my mind that day. He doesn't say that I was incoherent that day. He doesn't say that I didn't understand what the judge was talking about when the judge read the indictment to me. He doesn't say anything like that, right? No, but what he says is I wasn't properly informed about my case, which, again, construed liberally. But if your lawyers don't properly inform you about your case, but the judge tells you exactly what the elements of the offense are, that's really what Rule 11 requires, right? If the judge had to explain the elements of the offense prior to asking how he pled, I think he would. The judge read the indictment. Not prior. No, no, no. That was later. That was only after he didn't read the indictment prior to pleading. He only read the indictment after he couldn't articulate what it was that he had done wrong. Before he accepted the plea, he read the indictment, right? What he did was he basically took sentence by sentence and said yes, had him go yes, yes, yes. But, again, that's after he's already asked him how do you plea, after he's already asked him to try to explain in his own words what he did. Only when he couldn't do that does the judge get frustrated, what appears, and cuts him off, never even lets him explain what it is that he did with respect to Count 3, and starts going, okay, I'm just going to take this document out and ask, did you do this, did you do this, did you do this? And that's how it ends. That's not then two years later of thinking about it, the client goes, I want my plea back. I can't wait anymore. I did not understand what was going on. I wasn't properly informed of my case. Again, construing that liberally, that isn't simply my attorneys. That could be I didn't understand what was going on, or I didn't understand the nature of the charges. And that's where we come two years later and he goes, I didn't understand it. I realized what it was. Now they're telling me it was to aid and abet a foreign terrorist organization. Well, if that's what I pled guilty to, I want my plea back. And that's what he's saying. All right. Thank you. Thank you, Mr. Backman. Thank you both. Thank you. Thank you to all counsel. We will reserve decision on both cases.